# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DANIEL R. COUSINS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 16-302-LPS |
| | : | |
| REBBECCA DUTTON-MCCORMICK, et al., | : | |
| | : | |
| Defendants. | : | |

Daniel R. Cousins, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

## MEMORANDUM OPINION

September 26, 2016
Wilmington, Delaware

STARK, U.S. District Judge:

## I.     INTRODUCTION

Plaintiff Daniel R. Cousins ("Plaintiff"), an inmate at the James T. Vaughn Correctional

Center ("VCC") in Smyrna, Delaware, filed this action alleging constitutional violations pursuant to

42 U.S.C. § 1983.[1]  (D.I. 3)  He appears *pro se* and has been granted leave to proceed *in forma pauperis*.

(D.I. 5)  The Court proceeds to review and screen the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)

and  1915A(a).

## II.    BACKGROUND

On the morning of June 25, 2014, Plaintiff "went to a law library appointment like [he] had

been doing for the previous 4 years to do legal research and type on his fictional manuscript."  (D.I.

3 at 5)  Plaintiff alleges that upon his arrival he secured an electric typewriter "as [he] had on average

twice a week for 4 years running and under the supervision of 4 different law library civilian

supervisors each during their individual periods of 1 year rotations and ordered 3 legal reference

books for researching purposes."  (*Id.*)  Plaintiff alleges that all the other law librarians knew that he

used the electric typewriters to type his "novel length manuscripts" and that Plaintiff was shopping

his manuscript with literary agents for publication.  Plaintiff alleges that Defendant Rebbecca

Dutton-McCormick ("McCormick"), the law librarian at the VCC, had Defendant C/O Enoch

Totimeh ("Totimeh") come into the law library and confiscate "30 or so" typed and handwritten

pages of his novel in retaliation for challenging McCormick's authority with her superiors about

McCormick "denying persons their law library privileges."  (*Id.* at 6)

---

[1]Pursuant to 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived him of a
federal right, and that the person who caused the deprivation acted under color of state law.  *See*
*West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff alleges that, "in an effort to further these persons' agenda," Totimeh initiated a disciplinary report, fraudulently stated that Plaintiff was disorderly or threatening, and reported this to Defendant Lt. Barry Burman ("Burman"). Plaintiff informed Burman, Totimeh, and McCormick that he intended to file a lawsuit naming them as defendants. Plaintiff alleges that Burman ordered the C/Os assigned to his building to search Plaintiff's cell, confiscate all his research, materials, and writings, and take the material and all of Plaintiff's property to the education building where Burman separated all of Plaintiff's papers. (*Id.* at 6-7) Plaintiff alleges that he was immediately transferred from his minimum housing assignment to a maximum security housing assignment at the direction of Burman.

On June 26, 2014, a hearing was held on the disciplinary write-ups, and Plaintiff was "found "not guilty of any offense that would warrant any security advancements or suspension of programming." (*Id.* at 7) Plaintiff was not returned to his prior housing assignment, but instead spent the next 90 days in a medium high security building.

Plaintiff submitted a grievance for the confiscation of his "intellectual property," and alleges that he was denied access to the grievance procedure. Plaintiff alleges that his manuscript is completely fictional and was written to make aware, or report, real world women's issues dealing with sexual slavery.[2] Plaintiff alleges that his work should be protected because he is a journalist and as free speech under the First Amendment to the United States Constitution. Plaintiff alleges that publishing his work acts as a fictional way of reporting about sex trafficking. He seeks injunctive relief and compensatory damages and punitive damages.

---

[2]Plaintiff was convicted in 2000 for first degree rape, fourth degree rape, and first degree unlawful sexual contact. *See Cousins v. State*, 850 A 2d 302 (Del. 2004) (table).

## III.   LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *see also Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when deciding Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before

dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant a plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.*

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *See*

4

*Iqbal,* 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV.    DISCUSSION

### A.    Personal Property

Plaintiff alleges that thirty pages of his manuscript were taken by Totimeh by order of McCormick and that, later, Burman confiscated all the property in his cell.  A due process claim based on the deprivation of personal property is not actionable under § 1983 unless there is no adequate post-deprivation remedy available. *See Parratt v. Taylor,* 451 U.S. 527, 542 (1981), *overruled on other grounds* by 474 U.S. 327 (1986)); *Harris v. McMullen,* 609 F. App'x 704, 705 (3d Cir. Apr. 9, 2015). Because Delaware provides an adequate remedy in that one may file a common law claim for conversion of property, to the extent this is Plaintiff's claim, he cannot maintain a cause of action pursuant to § 1983. *See Harris,* 609 F. App'x at 705.  Therefore, the Court will summarily dismiss the claim.

### B.    First Amendment

Plaintiff alleges that Totimeh confiscated his manuscript at the direction of McCormick and Burman confiscated all the documents, research, and manuscripts related to his novel.  In order to establish that Defendants violated his First Amendment right to freedom of speech, Plaintiff must allege that they prevented him from exercising that right without any justification that is reasonably related to a legitimate penological interest. *See Beard v. Banks,* 548 U.S. 521, 528 (2006) (citing *Turner v. Safley,* 482 U.S. 78, 87 (1987)).

Liberally construing the allegations, as it must, the Court finds that Plaintiff has adequately alleged that McCormick, Totimeh, and Burman inhibited his right to freedom of speech, without

providing any justification for the confiscation of his materials. Plaintiff will be allowed to proceed against the foregoing Defendants on the First Amendment claim.

### C.     Disciplinary Report

Plaintiff alleges that Totimeh initiated a fraudulent disciplinary report that stated Plaintiff was disorderly or threatening. The filing of false disciplinary charges does not constitute a claim under § 1983 if the inmate was granted a hearing and an opportunity to rebut the charges. *See Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. Feb. 29, 2012) (citing *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002)). Plaintiff does not allege that he was denied a hearing. To the contrary, he states that during a hearing held on June 26, 2014, he was found not guilty of offenses that would warrant any security advancements or suspension of programming.

Therefore, the Court will dismiss the fraudulent disciplinary report claim against Totimeh as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

### D.     Housing Assignment/Classification

Plaintiff complains that he was transferred from his minimum security housing assignment to a maximum security housing assignment, and was not immediately returned to minimum security even after he was found "not guilty" of any offense that would warrant any security advancements or suspension of programming. Plaintiff complains that he remained in the medium high security building for 90 days. In essence, he alleges a violation of his right to due process.

In reviewing an alleged due process violation, it must be determined whether the alleged violation implicates a constitutionally protected property or liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). "Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). In a prison setting, states may create protected liberty interests. These interests will

6

generally be limited to freedom from restraint which, while not exceeding the sentence in such an
unexpected manner as to give rise to protection by the Due Process Clause of its own force,
nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary
incidents of prison life. *See Sandin*, 515 U.S. at 484 (internal citations omitted). Notably, neither
Delaware law nor VCC regulations create a liberty interest in a prisoner's classification within an
institution. *See* 11 Del. C. § 6529(e). Moreover, "'[a]s long as the conditions or degree of
confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not
otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's
treatment by prison authorities to judicial oversight.'" *Hewitt*, 459 U.S. at 468 (quoting *Montanye v.
Haymes*, 427 U.S. 236, 242 (1976)).

It has thus been determined that the transfer of a prisoner from one classification is
unprotected by "'the Due Process Clause in and of itself,'" even though the change in status
involves a significant modification in conditions of confinement. *Hewitt*, 459 U.S. at 468 (citation
omitted); *Moody v. Daggett*, 429 U.S. 78 (1976 ); *see also Brown v. Cunningham*, 730 F. Supp. 612 (D. Del.
1990) (plaintiff's transfer from general population to administrative segregation, without being given
notice and opportunity to challenge it, was not violation of plaintiff's liberty interest). The transfer
from one classification to another did not violate Plaintiff's due process rights. Accordingly, the
decision to place Plaintiff in maximum security housing or medium high housing for 90 days
cannot be viewed as falling outside the scope of "the sentence imposed upon him [or] otherwise
violative of the Constitution."

Plaintiff's due process claim has no arguable basis in law or in fact and, therefore, will be
dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

7

### E.   Grievance

Plaintiff complains that he was denied access to the grievance procedure and process even though he continually stated that he was not grieving a disciplinary action but the confiscation of his intellectual property.  From the allegations, it seems that Plaintiff submitted a grievance, but that it was returned as non-grievable for seeking recourse over a disciplinary action.

The filing of prison grievances is a constitutionally protected activity.  *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. Nov. 7, 2006).  To the extent that Plaintiff bases his claim upon his dissatisfaction with the grievance procedure or denial of his grievances, the claim fails because an inmate does not have a "free-standing constitutional right to an effective  grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. Aug. 18, 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).  Notably, the denial of grievance appeals does not in itself give rise to a constitutional claim, as Plaintiff is free to bring a civil rights claim in District Court, as Plaintiff has done.  *See Winn v. Department of Corr.*, 340 F. App'x 757, 759 (3d Cir. July 28, 2009) (citing *Flick*, 932 F.2d at 729).

Plaintiff cannot maintain a constitutional claim based upon his perception that his grievance was not properly processed, that it was denied or returned as non-grievable, or that the grievance process is inadequate.  Therefore, the Court will dismiss the claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### F.   Respondeat Superior/Personal Involvement

Michael Little ("Little"), director of legal services, is named as a defendant in the caption of the complaint and in the Defendant(s) information section in the complaint.[3]  A civil rights

---

[3]Attached to the complaint is a memo complaining that Plaintiff was not allowed to visit the law library in person and was required to conduct research via written requests.  He advises that as of April 16, 2016, he was allowed to return to the law library to resume his research.  (*See* D.I. 3 Ex.)

Case 1:16-cv-00302-LPS   Document 7   Filed 09/26/16   Page 10 of 12 PageID #: 38

complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980); *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir. 1978)). However, there are no allegations directed towards Little.

It may be that Little is named as a defendant based upon his supervisory position. However, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory.[4] *See Iqbal*, 556 U.S. at 676; *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d at 353 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her superintendent responsibilities.[5] *See Iqbal*, 556 U.S. at 677. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

---

As is evident from the filing, Plaintiff was not denied access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 822 (1977) (prisons must give inmates access to law libraries or direct legal assistance).

[4]In *Iqbal*, the plaintiff alleged supervisory officials violated his rights because one official was the "principal architect" of the policy, and another was "implemental" in adoption and execution of the policy. *See* 556 U.S. at 669. The Supreme Court found the allegations facially insufficient. *See id.* at 676 (quoting *Robertson v. Sichel*, 127 U.S. 507, 515–516 (1888), for proposition that "[a] public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").

[5]In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official. *See Bayer v. Monroe Cnty. Children and Youth Services*, 577 F.3d 186, 190 n.5 (3d Cir. 2009).

In the present case, Plaintiff does not associate any of his allegations with Little and provides no facts to support a claim against him. The claim is facially insufficient. As a result, the Court will dismiss Little as a defendant pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

### G.    Retaliation

Plaintiff appears to have alleged cognizable and non-frivolous retaliation claims against McCormick and Burman. *See White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990) (retaliation for exercise of constitutionally protected rights is itself violation of rights secured by Constitution actionable under § 1983). In screening this claim, the Court assumes, without deciding, that Plaintiff's verbal complaints and statements of his intent to sue are forms of protected speech. It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981). The confiscation of Plaintiff's manuscript and his transfer to maximum security after he complained of McCormick's refusal to allow him to use the law library and after he advised Defendants that he intended to file a lawsuit suit may qualify as adverse treatment for purposes of a retaliation claim. Additionally, Plaintiff has alleged causation through the suggestive timing of McCormick and Burman's actions.

Therefore, Plaintiff will be allowed to proceed with the retaliation claims against McCormick and Burman.

### V.    CONCLUSION

For the above reasons, the Court will: (1) dismiss Defendant Michael Little, and the personal property, fraudulent disciplinary write-up, housing assignment/classification, and grievance claims as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1); and (2) allow Plaintiff to proceed against Defendants Rebbecca Dutton-McCormick, C/O Enoch Totimeh, and Lt. Barry

Burman on the First Amendment claims and against Defendants Rebbecca Dutton-McCormick and

Lt. Barry Burman on the retaliation claims

An appropriate Order follows.